# Speese, Appellant, *v.* Schuylkill River East Side Railroad Company.

*Railroads—Agreement with landowner as to overhead crossing—Grade crossing.*

Where an owner of land over which a railroad company has a right of way enters into an agreement in writing by which in consideration of the railroad company consenting to the construction of an overhead crossing in a manner specified, the owner relinquishes his right to a grade crossing, the owner will be bound by the agreement, and he cannot thereafter use the grade crossing, and also at the same time construct and maintain an overhead crossing.

In such a case the owner fully admits by his agreement either that he had no right to an overhead crossing, or that his right was doubtful without the railroad company's consent; and as he obtained that consent on no other terms than by agreeing to abandon the grade crossing, he should be held to his bargain.

The question of the rights of an owner of land, bisected by a railroad company, under its power of eminent domain *not decided.*

Argued Jan. 14, 1902. Appeal, No. 312, Jan. T., 1901, by plaintiff, from decree of C. P. No. 3, Phila. Co., June T., 1899, No. 1039, dismissing bill in equity in case of Andrews J. Speese v. Schuylkill River East Side Railroad Company and the Baltimore & Ohio Railroad Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an injunction. Before McCarthy, J.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Henry N. Wessel* and *John G. Johnson,* for appellant.—If the owner of ground bisected by a railroad was entitled to use both overhead and grade crossings, he cannot forever be prevented from using both an overhead and grade crossing because he has surrendered the grade crossing, if at the time of surrendering he reserved to himself the right, upon giving certain notice, to restore, use, and enjoy the grade crossing, with all its rights,

incidents, privileges, and appurtenances as they existed at the date of the execution of the contract, in the same manner and with the same force and effect as if the agreement had never been made. And in any event the owner cannot be prevented from erecting the overhead bridge: Struthers v. Clark, 30 Pa. 210; Edelman v. Yeakel, 27 Pa. 26; Ellis v. Lane, 85 Pa. 265; Shafer v. Senseman, 125 Pa. 310; Pittsburg Carbon Co. v. Phila. Co., 130 Pa. 438; Krumrine v. Grenoble, 165 Pa. 98; Matchette v. Colburn, 166 Pa. 265; Schuylkill Navigation Co. v. Moore, 2 Whart. 477; Saltsburg Gas Co. v. Saltsburg Borough, 138 Pa. 250.

A railroad company which has secured, by condemnation proceedings, a right of way for a roadbed, has not the exclusive use of all the space above its roadbed, as against the owner of property which is bisected by the railway: Pittsburg, etc., R. R. Co. v. Bruce, 102 Pa. 33; Lance's Appeal, 55 Pa. 16; Western Penna. R. R. Co. v. Johnston, 59 Pa. 290; Saxton v. Mitchell, 78 Pa. 479; Phila., etc., R. R. Co. v. Merkle, 10 Phila. 604; Allegheny v. Ohio, etc., R. R. Co., 26 Pa. 355; Searle v. Lackawanna, etc., R. R. Co., 33 Pa. 57; Penn Gas Coal Co. v. Versailles Fuel Gas Co., 131 Pa. 522; Wallace v. Jefferson Gas Co., 147 Pa. 205; Upper Ten Mile Plank Road Co. v. Braden, 172 Pa. 460; Chester, etc., R. R. Co. v. Standard Steel Casting Co., 6 Del. Co. Rep. 233; Sterling's App., 111 Pa. 35; Patterson v. Phila., etc., R. R. Co., 8 Pa. C. C. Rep. 186; Sutton v. Groll, 42 N. J. Eq. 213; 5 Atl. Repr. 901; Beacon v. Pittsburg, etc., R. R. Co., 1 Pa. Dist. Rep. 619; Kansas Central Ry. Co. v. Allen, 22 Kansas, 285.

Almost every state has passed laws preserving, as nearly as possible, the rights of owners of land bisected by a railroad to use the railroad company's right of way as a means of passage from one part of the land to the other, and under these acts the courts have held that he has a reasonable right to farm crossings at such places as the necessities of his business demands, provided such crossings and the use thereof will not unreasonably interfere with the use of the right of way by the railroad company: Chester R. R. Co. v. Steel Co., 6 Del. 233; Railroad Co. v. Kregelo, 32 Kan. 608; Railroad Co. v. Cosper, 42 Kan. 561; Railway Co. v. Rowland, 70 Tex. 298; 7 S. W. Repr. 718; Cement Co. v. R. R. Co., 130 N. Y. 152; 29 N. E. Repr. 121;

Railroad Co. v. Willenborg, 117 Ill. 203; Wademan v. Railroad Co., 51 N. Y. 568; Henry v. R. R. Co., 2 Iowa, 288; Jones v. Seligman, 81 N. Y. 190; Beardsley v. Ry. Co., 142 N. Y. 173; 36 N. E. Repr. 887.

*W. B. Linn,* for appellee.—A person who purchased a lot of ground, subject to the right of way of a railroad in full operation, and obtained by condemnation under the act of 1849, across which right of way the owner has a grade crossing in actual use connecting the two parts of his lot, is not entitled to a second crossing by means of a bridge over the right of way without obtaining the consent of the railroad company: Saxton v. Mitchell, 78 Pa. 479; Imp. Co.'s App., 54 Pa. 361; DeCamp v. R. R. Co., 47 N. J. L. 50; Pipe Line Co. v. R. R. Co., 62 N. J. L. 255; Struthers v. Ry. Co., 87 Pa. 282; Philadelphia v. Ward, 174 Pa. 45; Ramsden v. Ry. Co., 1 Exch. Rep. 623; Ry. Co. v. Peet, 152 Pa. 488; New York, etc., R. R. Co. v. Comstock, 60 Conn. 208; 22 Atl. Repr. 511.

The following decisions from other jurisdictions reach the conclusion for which appellee contends: C. & P. R. R. Co. v. Holton, 32 Vt. 43; T. & B. R. R. Co. v. Potter, 42 Vt. 265; Brainard v. Clapp et al., 10 Cush. 6; Presbry v. Old Colony Ry. Co., 103 Mass. 1; Peirce v. B. & L. R. R. Corporation, 141 Mass. 481; L. S., etc., R. R. Co. v. Greve, 17 Minn. 324; Railway Co. v. Combs, 51 Ark. 324; Henry v. R. R. Co., 2 Iowa, 288; Reichert v. Keller, 78 N. W. Repr. (Nebraska), 381; Paxton v. Yazoo, etc., R. Co., 24 So. Repr. (Miss.) 536; Wilmot v. Yazoo, etc., R. Co., 24 So. Repr. (Miss.) 701; Olive v. Sabine, etc., Ry. Co., 33 S. W. Repr. (Texas) 139; N. Y, etc., R. Co. v. Comstock, 60 Conn. 208; Hollingsworth v. Des Moines, etc., Ry. Co., 63 Ia. 444; Hayden v. Skillings, 78 Me. 413; 6 Atl. Repr. 830.

In any event the plaintiff is not entitled to two crossings, one at grade and one by bridge, under the contract executed by the plaintiff and defendants, dated July 9, 1900, taken in connection with the letter of abrogation from plaintiff to defendants, to which request defendants declined to accede.

OPINION BY MR. JUSTICE DEAN, February 24, 1902:

The plaintiff is the owner of a lot of ground on the north-

east corner of Twenty-seventh and South streets in Philadelphia, fronting on Twenty-seventh street 117 feet and extending to the Schuylkill river on the east bank, 570 feet. The property was conveyed to him by deed dated March 28, 1899, at which date it was already subject to right of way of the Schuylkill River East Side Railroad Company. The company had by proper proceedings in the court of common pleas in Philadelphia, as early as 1883, appropriated for railroad purposes, a strip bisecting the lot, sixty feet wide, and there had been awarded the then owner, one Frank K. Ward, damages therefor, so that this plaintiff took the land subject to all the rights which the railroad company acquired by an appropriation under the statute. The plaintiff purchased the lot for the purposes of a coal and wood yard. Prior to his purchase, there was a crossing over the railroad at grade, and communication between, and the use of the two parts of the bisected lot, were by this means kept up and the business of storing thereon, and selling therefrom, coal and wood was carried on. Such was the situation on July 9, 1900, at which date plaintiff and defendant companies entered into a written agreement, by which Speese agreed to relinquish his right of crossing at grade, and in consideration therefor, the railroad companies consented to an overhead crossing, by an iron bridge at a point designated on a map appended to the agreement. The bridge to be constructed on plans approved by the chief engineer of the Baltimore & Ohio Railroad Company and to be kept in repair by Speese. Then came this stipulation:

" 3. In consideration of the grant of the right to erect said bridge the second party (Speese) for himself, his heirs and assigns, covenants that within thirty days from the date of this agreement he will cease to use the present grade crossing and doth hereby release and surrender unto the first parties all right which he or his heirs and assigns may have as owner or owners of the land hereinafter described to cross at grade the right of way of the Schuylkill River East Side Railroad, and doth agree for himself, his heirs and assigns, that the Schuylkill River East Side Railroad Company shall hold its right of way over the land hereinafter described free from any right to cross at grade which the second party or any one claiming land under him may have."

Then, this was followed by another stipulation as follows:

" The party of the second part (Speese) his heirs and assigns . . . . shall have the right at his, her or their own cost and expense to take down and remove the said overhead bridge and to resume, restore, use and enjoy the grade crossing with all its rights, incidents, privileges and appurtenances as they exist at the date of this contract upon giving sixty days' notice to the party of the first part of an intention so to remove said overhead bridge and to restore said grade crossing, in the same manner and with the same force and effect as if this agreement had never been made."

The plaintiff, however, continued to use and maintain his grade crossing from the date of this agreement, July 9, 1900, until January 4, 1901, when he served the notice from which this is an extract on the president of the railroad companies :

" Inasmuch as we have been unable to arrive at a definite understanding relative to my right to continue to use the grade crossing at Twenty-seventh and South streets, Philadelphia, in conjunction with the overhead bridge which was to have been erected, I beg to advise you that after the expiration of sixty days from the date hereof, it is my intention to terminate the agreement entered into between your companies and myself on July 9, 1900, and thereafter to use the grade crossing and each and every of the incidents of ownership of my property at Twenty-seventh and South streets, with the same force and effect as if that agreement had never been entered into."

The plaintiff claimed that he found it impracticable to abandon entirely the old grade crossing, but alleged that it was his intention to use it as little as possible. Nevertheless he asserted his right, as a landowner, whose land had been bisected by an appropriation of a strip under right of eminent domain, to keep up also the connection between the parts by an overhead structure which does not interfere with the use of the strip by the railroad company for railroad purposes. On this view of his legal rights, plaintiff undertook to erect an overhead bridge and thus to a limited extent use both modes of crossing, one at grade and one overhead. This attempt to erect a bridge defendants threaten to forcibly prevent, unless it be constructed as stipulated in the agreement, and there be an abandonment of the grade crossing. The plaintiff then filed this bill to restrain defendants from interfering with him in such construc-

tion.  Defendants set up the agreement as a bar, and further, in the absence of the agreement deny plaintiff's right to erect such structure over the sixty feet included within the boundaries of their appropriation for their right of way.

The learned judge in the court below in a very able and elaborate opinion, decided against plaintiff on both grounds, and he brings this appeal.  Appellant's counsel assign thirteen errors to the court's conclusions of law.  It is not contended that the notice to the railroad company, hereinbefore referred to is that provided for in the agreement of July 9, 1900, but it is earnestly argued, that after the service of that notice the parties were restored to their rights as they existed before the agreement was made, and thereafter, the right of plaintiff is that of an owner of land bisected by a railroad company under power of eminent domain, and therefore, as to him, it took only so much of his property as it could use for railroad purposes.  We shall not discuss this question, although a very interesting one ; the learned judge of the court below has ably marshaled most of the authorities and may have arrived at a correct conclusion, but we leave the decision of that point for some case where the issue turns upon it; the one before us turns upon a true interpretation of the agreement.  Assuming, that the plaintiff had a right before the agreement was made, to construct an overhead bridge ; in his own view, that right was not free from doubt, and so he bargained with the railroad company for an undisputed one ; this he got on consideration that he relinquished his right to the crossing at grade which he then had. No fraud or deception was practiced upon him ; what he did was of his own free will.  By that agreement, no matter what he now says, he fully admitted, either, that he had no right to an overhead crossing or that his right was doubtful without the railroad's consent; he obtained that consent on no other terms, than by agreeing to abandon the grade crossing; he nowhere intimates, that at that time he expected to get two crossings.  Why should he not be held to his agreement made in view of all the facts as fully as they are before him now ?  His view of the law has since perhaps changed, but the facts have not; we do not intimate, that it is a correct view now ; but at least, at that date, it was doubtful ; the consideration, therefore, was good.  It is asked by appellant's counsel, is he, therefore

to be forever prevented from using both crossings? We answer, why not? A grown man in full possession of all his faculties, with a full knowledge of all the facts, voluntarily bargains concerning a property right; this exercise of this right is guaranteed him by the fundamental law ; but it just as clearly guarantees him the right of dealing concerning it, as it guarantees the right. If he had bargained it away he must be held to the bargain.

So we hold here, the plaintiff can maintain his grade crossing; but if he wished an overhead one, he can have that, and that only, if he obtains it strictly in accordance with his agreement.

The decree is affirmed and the appeal is dismissed at costs of appellant.